**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| JEFFREY D. REYNOLDS, on behalf of himself and all others similarly situated, <br><br>                  Plaintiff, <br><br> v. <br><br> XEROX EDUCATION SERVICES, LLC, *f/k/a* ACS EDUCATION SERVICES, INC. and WELLS FARGO BANK, N.A., <br><br>                 Defendants. | Case No. 6:13-cv-1223 LEK/TWD |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

Lawrence P. Eagel (B.N.: 509836)
Justin A. Kuehn (B.N.: 519105)
BRAGAR EAGEL & SQUIRE, PC
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
eagel@bespc.com
kuehn@bespc.com

*Attorneys for Plaintiff and the Class*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

THE COMPLAINT ...................................................................................................3

PROCEDURAL HISTORY.........................................................................................4

ARGUMENT ...........................................................................................................5

    I.      DEFENDANTS' MOTION TO DISMISS FOR MOOTNESS
          SHOULD BE DENIED .........................................................................5

          A.  The Offer of Judgment Does Not Provide for Complete Relief .................5

          B.  In All Events, Even If the Offer of Judgment Was Complete,
              It Cannot Moot a Putative Class Action .......................................8

    II.     DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE
          A CLAIM SHOULD BE DENIED.......................................................11

          A.  Standard of Review...................................................................11

          B.  The Complaint States a Claim Under GBL § 349 ....................................11

          C.  Wells Fargo Is Responsible For the GBL § 349 Violations of
              Its Agent Xerox.......................................................................16

CONCLUSION.......................................................................................................17

i

# TABLE OF AUTHORITIES

Cases:

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................11, 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544  (2007) ...........................................................................................11, 16

*Breitman v. Xerox Educ. Servs., LLC*,
   12 civ 6583, 2013 U.S. Dist. LEXIS 139613 (S.D.N.Y. Sept. 27, 2013) ...................13, 15

*Cohen v. JP Morgan Chase & Co.*,
   498 F.3d 111 (2d Cir. 2007) ...........................................................................................15

*Cruz v. Fxdirectdealer, LLC*,
   720 F.3d 115 (2d Cir. 2013) ...........................................................................................16

*Damasco v. Clearwire Corp.*,
   662 F.3d 891 (7th Cir. 2011) ...........................................................................................9

*Dolan v. Fairbanks Capital Corp.*,
   03 CV 3285, 2013 U.S. Dist. LEXIS 34830 (E.D.N.Y. Mar. 13, 2013) ..........................15

*Douyon v. NY Med. Health Care, P.C.*,
   894 F. Supp. 2d 245 (E.D.N.Y. 2012) ...........................................................................16

*Genesis Healthcare Corp. v. Symczyk*,
   133 S. Ct. 1523 (U.S. 2013) ...........................................................................................10

*Gildor v. United States Postal Serv.*,
   491 F. Supp. 2d 305 (N.D.N.Y 2007) ...............................................................................5

*Gorham-Dimaggio v. Countrywide Home Loans, Inc.*,
   592 F. Supp. 2d 283 (N.D.N.Y 2008) .............................................................................15

*Lee v. Makhnevich*,
   No. 11-8665, 2013 U.S. Dist. LEXIS 43760 (S.D.N.Y. Mar. 27, 2013) ..........................11

*Lopez-Martinez v. Gokul Inc. of N.Y.*,
   13-cv-467, 2013 U.S. Dist. LEXIS 165311 (N.D.N.Y Nov. 21, 2013) .......................5, 10

*Lucero v. Bureau of Collection Recovery, Inc.*,
   639 F.3d 1239 (10th Cir. 2011) .................................................................................9, 11

*Koch v. Acker, Merrall & Condit Co.*,
    18 N.Y.3d 940 (2012) ................................................................................................11

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995) ...........................................................................................11, 15

*Pelman v. McDonald's Corp.*,
    396 F.3d 508 (2d Cir. 2005)...................................................................................11

*Physicians Healthsource, Inc. v. Purdue Pharma L.P.*,
    12-cv-1208 , 2013 U.S. Dist. LEXIS 127117 (D. Conn. Sept. 6, 2013)...........................8

*Pitts v. Terrible Herbst, Inc.*,
    653 F.3d 1081 (9th Cir. 2011) ...........................................................................9, 10

*Shepherd v. Law Offices of Cohen & Slamowitz, LLP*,
    668 F. Supp. 2d 579 (S.D.N.Y. 2009)....................................................................7, 8

*Weiss v. Regal Collections*,
    385 F.3d 337 (3d Cir. 2004)...............................................................................9, 11

Rules:

Fed. R. Civ. P. 9(b) ...................................................................................................11

Fed. R. Civ. P. 12(b)(1)................................................................................................1

Fed. R. Civ. P. 12(b)(3)................................................................................................4

Fed. R. Civ. P. 12(b)(6)..............................................................................1, 3, 4, 11, 15

Fed. R. Civ. P. 23 .....................................................................................................10

Fed. R. Civ. P. 68 ..........................................................................................2, 5, 7, 8, 9

Statute:

28 U.S.C. § 1404(a) .....................................................................................................4

Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ........................................7

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*.....................................................10

New York General Business Law § 349................................................................ *passim*

## PRELIMINARY STATEMENT

Plaintiff Jeffery D. Reynolds ("Plaintiff"), on behalf of himself and all others similarly situated, submits this memorandum of law in opposition to the motion [Dkt. Nos. 55-59] by defendants Xerox Education Services, LLC *f/k/a* ACS Education Services, Inc. ("Xerox") and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, "Defendants"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the amended complaint [Dkt. No. 50] ("Complaint" or "AC").[1]

This is a putative class action on behalf of student loan borrowers whose monthly payments were misapplied by Defendants to the benefit of Defendants and the detriment of Plaintiff and the class. The Complaint alleges Defendants have improperly applied monthly student loan payments to prevent and delay repayment of student loans. When a borrower begins repayment of a student loan, an amortization schedule is established based upon the loan's principal, interest rate, and term. If a borrower makes all payments in accordance with the amortization schedule then his/her loan should be completely repaid. Defendants have failed to adhere to amortization schedules for student loans thereby causing student loans to retain principal balances and continue to bear interest to Defendants' benefit long after the loans should have been fully repaid. (AC ¶¶2-3, 15-27, Exs. A-F)

The Complaint alleges that Defendants have structured their business systems in order to make, it difficult, if not it virtually impossible, to correctly credit loan payments made by Plaintiff and members of the class. (AC ¶¶3, 16, 26, 46)  For example, Plaintiff's loan repayment history (a copy of which is Kuehn Dec. Ex. A) ("Repayment History") shows that he made 40 monthly payments before a single cent of his payments was applied to the principal of his loan. The amount of interest charged to Plaintiff during this period was the same as if his loan had an

---

[1] Also submitted in opposition is the Declaration of Justin A. Kuehn, Esq. ("Kuehn Dec."), dated February 4, 2014.

interest rate of approximately 11% when his interest rate at all times was 9%.  As set forth in the Complaint, there is an obvious disconnect between the Loan Consolidation Disclosure Statement and Repayment Schedules sent to borrowers and how the Xerox system actually services borrowers' loans. (AC ¶¶15-27, Exs. A-F)

Defendants' motion to dismiss for mootness fails for two independent reasons.  First, Defendants' Federal Rule of Civil Procedure 68 offer of judgment to Plaintiff (a copy of which is attached to the Declaration of Edward K. Lenci, Esq. [Dkt. No. 58]) (the "Offer of Judgment") does not offer Plaintiff the entire relief sought in this action.  The Complaint asserts two claims (1) breach of contract and (2) violations of New York General Business Law ("GBL") § 349. (AC ¶¶1, 39-42, 43-49)  However, the Offer of Judgment only purports to offer payment of the relief sought in regards to the Complaint's claim for breach of contract in exchange for dismissal of the entire Complaint.  Because Defendants have not offered the entire relief sought in this lawsuit their motion to dismiss for mootness fails.  Second, a class action cannot be mooted by an offer of judgment unless there is unreasonable delay by plaintiff before filing a motion for class certification.  Here, there has been no such delay, and Plaintiff should be afforded an opportunity to make a timely motion for class certification.  Accordingly, Defendants' motion to dismiss for mootness must be denied.

Defendants' motion to dismiss Plaintiff's claim for violations of GBL § 349 for failure to state a claim is also without merit.  The Complaint contains detailed facts supporting that Defendants deceptively represented to borrowers that their loans will be amortized in accordance with schedules established at the start of repayment as reflected on the Loan Consolidation Disclosure Statement and Repayment Schedules issued to borrowers when, in fact, the Loan Consolidation Disclosure and Repayment Schedules are materially incorrect, and Defendants

employ a system which disregards the proper amortization schedules in favor of crediting payments to student loans in a manner that appears to be intended to keep borrowers in debt to maximize the amount of interest paid to the lender over the life of the loans. (AC ¶¶3, 26, 46) Defendants' arguments to the contrary are merely requests by Defendants that the Court at this stage adopt their version of events, all of which are disputed.  This is not a proper basis to dismiss a claim under Fed. R. Civ. P. 12(b)(6).  The Complaint plainly alleges more than enough facts to state a claim for violating GBL § 349.

Defendants' motion to dismiss should be denied in its entirety.

## THE COMPLAINT

The Complaint asserts a class action on behalf of student loan borrowers for breach of contract and violations of GBL § 349 against Plaintiff's student loan servicer (Xerox) and owner (Wells Fargo). (AC ¶1)

The Complaint alleges that Plaintiff received a "Loan Consolidation Disclosure Statement and Repayment Schedule," dated September 28, 1999 (the "Disclosure Statement"), from AFSA Data Corp., which was acquired by Xerox in or around June 2002.  The Disclosure Statement provided that, to repay his loan in full, Plaintiff needed to make 215 monthly payments of $285.07 beginning on November 28, 1999 and one monthly payment of $283.56 on October 28, 2017.  Defendants, however, failed to adhere to the Disclosure Statement and thereby caused Plaintiff's loan to retain principal balances and to continue to bear interest to Defendants' benefit long after the loan should have been fully repaid. (AC ¶¶11-16)

Plaintiff engaged in numerous unsuccessful efforts to force Defendants to abide by their contract and apply the normal and customary method of crediting payments on long-term loans. Plaintiff's efforts resulted in Xerox's computer system, on multiple occasions, increasing his

monthly payment and repayment term.  Defendants evidently had a policy of misapplying payments, which was embedded in its processing equipment, making it virtually impossible to correctly credit payments made by Plaintiff and members of the class.  The misapplication of Plaintiff's payments toward his student loan is an illustration of Defendants' misapplication policy.[2] (AC ¶¶15-27, Exs. A-F)

The Complaint further alleges that a recent report by Federal Student Aid ("FSA") found that the Xerox student loan "servicing system" has "material weaknesses" that cause, among other things, "inflated loan balances."  Similarly, a report by the U.S. Department of Education (the "Department") found the Xerox "servicing system" has "internal control deficiencies" that "may adversely impact the accuracy of financial reporting, to include the reporting of loan balances…" (AC ¶¶4, 28-32)

## PROCEDURAL HISTORY

Plaintiff filed the Original Complaint [Dkt. No. 1] in this action on February 13, 2013 in the Southern District of New York ("SDNY").  On June 14, 2013, Defendants filed a motion [Dkt. Nos. 10-12] to dismiss the Original Complaint under Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue or under the doctrine of *forum non conveniens*; or, alternatively, pursuant to 28 U.S.C. § 1404(a), to transfer this matter to this Court or the Western District of Virginia; or alternatively, dismissing Plaintiff's claim for unjust enrichment under Rule 12(b)(6).  After Defendants' motion to dismiss the Original Complaint was fully briefed [Dkt. No. 15-16, 20-21], oral argument was held on the motion to dismiss.  On September 20,

---

[2] The Repayment History shows that not a single cent of Plaintiff's first 40 monthly payments went toward his loan's principal.

2013, an order was entered [Dkt. No. 26] denying Defendants' motion to dismiss the Original

Complaint and granting Defendants' motion to transfer this matter to this Court.[3]

On October 1, 2013, this matter was transferred from the SDNY to this Court [Dkt. No.

27].  On November 18, 2013, Defendants refiled [Dkt. Nos. 42, 44-5] their motion to dismiss the

unjust enrichment claim in the Original Complaint.  On December 6, 2013, Plaintiff filed the

Complaint [Dkt. No. 50].  In the Complaint, Plaintiff withdrew his claim for unjust enrichment

and asserted a claim for violation of GBL § 349, but did not materially change his breach of

contract claim.  On December 23, 2013, Defendants served the Offer of Judgment [Dkt. No. 58].

On January 10, 2014, Defendants moved [Dkt. Nos. 55-59] to dismiss Complaint in its entirety.

## ARGUMENT

## I.    DEFENDANTS' MOTION TO DISMISS FOR MOOTNESS SHOULD BE DENIED

### A.    The Offer of Judgment Does Not Provide for Complete Relief

A defendant must offer complete relief to moot an action through a Rule 68 offer of

judgment. *See*, *e.g.*, *Lopez-Martinez v. Gokul Inc. of N.Y.*, 13-cv-467, 2013 U.S. Dist. LEXIS

165311, at *14 (N.D.N.Y Nov. 21, 2013)  (Denying motion to dismiss for mootness after Rule

68 offer of judgment because defendant failed to offer "full relief."); *Gildor v. United States*

*Postal Serv.*, 491 F. Supp. 2d 305, 308 (N.D.N.Y 2007) (same).  Here, the Offer of Judgment is

plainly not an offer of complete relief because it only purports to offer the relief sought by

Plaintiff in regard to his breach of contract claim (one of two claims asserted in the Complaint),

but seeks dismissal of the entire action.

As a threshold matter, the Offer of Judgment does not even specify amounts to be paid to

Plaintiff in supposed satisfaction of his breach of contract claim.  Leaving the dispute over the

---

[3] Because the SDNY transferred this matter to this Court, the September 20, 2013 order [Dkt. No. 26] did not decide
the branch of Defendants' motion seeking to dismiss the Original Complaint's claim for unjust enrichment.

actual amounts Defendants are "offering" for another day.  Plaintiff undertook great efforts prior to litigation to resolve this matter and get Defendants to abide by their contractual obligations, including seven calls with Xerox customer service (AC ¶¶15-27) and filing a complaint with the New York Better Business Bureau (AC ¶¶20, 23 n.6).  In light of this, Plaintiff is justifiably skeptical of, and should not be forced to accept, any offer of judgment that the leaves room for debate in what its actual terms are.

Moreover, the Complaint asserts two claims (1) breach of contract and (2) violation of GBL § 349. (AC ¶¶1, 39-42, 43-49)  On the claim for violation of GBL § 349 the Complaint seeks, in addition to the damages sought on the breach of contract claim, reasonable attorneys' fees and treble damages under GBL§ 349(h). (AC ¶49, Prayer for Relief (d), (f))  The Offer of Judgment makes no offer of attorneys' fees or treble damages, and therefore does not offer Plaintiff the maximum recovery sought by him in the Complaint.

In support of their motion, Defendants do not even claim that the Offer of Judgment offers the maximum relief available to Plaintiff in regard to his GBL § 349 claim.  For example, in their Preliminary Statement (Defendants' Memorandum of Law in Support of their motion to dismiss [Dkt. No. 56] ("Defs. Memo") at p. 1), Defendants state, "[a]fter Plaintiff filed his Amended Complaint, <u>Defendants made an offer of judgment in full satisfaction of Plaintiff's breach of contract claim…</u>" (underline added); *See also* Defs. Memo at p. 4 ("Even though the Offer of Judgment fully satisfied Plaintiff's breach of contract claim, Plaintiff did not accept it."); Defs. Memo at pp. 4-8 (titled: "PLAINTIFF'S BREACH OF CONTRACT CLAIM IS MOOT AS A RESULT OF THE OFFER OF JUDGMENT…")  Further, Defendants' expressly argue (Defs. Memo at p. 7 n.5) that attorneys' fees are not included in the Offer of Judgment.

While the relief offered in the Offer of Judgment is limited to Plaintiff's breach of contract claim, the corresponding release sought by Defendants is not so limited. If Plaintiff accepted the Offer of Judgment it would require him to relinquish both his breach of contract and his GBL claim. Specifically, the Offer of Judgment provides:

> The above shall be in full and complete satisfaction, release and discharge of any claim of the Amended Class Action Complaint ("Complaint") as to which the alleged acts and/or omissions set forth in that Complaint actually state a claim upon which relief can granted. If accepted, nothing further as judgment will be entered against either XES or WF and in favor of Plaintiff in this action as respects any such claim.

Thus, the Offer of Judgment seeks dismissal of the entire Complaint, but only offers, at best, the relief sought by Plaintiff's breach of contract claim. This is plainly not an offer of complete relief.

A review of *Shepherd v. Law Offices of Cohen & Slamowitz, LLP*, 668 F. Supp. 2d 579 (S.D.N.Y. 2009) is instructive here. In *Shepherd*, plaintiff asserted a claim under the Fair Debt Collection Practices Act ("FDCPA"), violation of GBL § 349, and libel. Prior to filing an answer, defendant served a Rule 68 offer of judgment offering the statutory maximum amount of damages available under the FDCPA plus costs and reasonable attorneys' fees in exchange for dismissal of the entire complaint. After plaintiff failed to respond to defendant's offer, defendant moved to dismiss the complaint as moot. In denying defendant's motion the court explained (at 581-83):

> In this case, defendant was confronted with a complaint containing not one, but three causes of action. Defendant's offer of judgment was, by its own admission, for the maximum amount that it believed the plaintiff was authorized to recover on just one of those three causes of action: the sum of $1,000. But the offer of judgment did not say that it was an offer only on the First Cause of Action; Defendant endeavors to suggest that the offer was intended to apply only to plaintiff's FDCPA claim, but that is not what the offer says, and it is the written terms of the offer that control, not defendant's post-hoc characterization of what it meant. By its terms, the $1,000 figure '....includes *all amounts that might*

*otherwise be recovered by plaintiff* for any pre-judgment interest, penalties and damages of any nature, including statutory, actual, treble, punitive or exemplary damages.' (Emphasis added). The only exception carved out on the face of the offer is costs and attorneys' fees - not plaintiff's state law claims. It is too late to amend the offer, and any amendment defendant might wish to make certainly cannot be accomplished in a brief in support of a motion for summary judgment.

\*\*\*

Furthermore, defendant acts as if the FDCPA claim were the only claim in suit. It is not. Plaintiff asserts two other claims, and the maximum amount available to her is what she could expect to recover on the entire lawsuit, not just on her federal claim. When an offer of judgment does not cover all potential damages on all claims, the offer is not sufficient and controversy remains…

\*\*\*

Furthermore, as previously discussed, the text of defendant's Rule 68 offer was not limited to satisfaction of plaintiff's federal claim. If plaintiff had accepted the offer of judgment, and the clerk had entered judgment thereon, plaintiff's entire complaint would have been dismissed - state law claims as well as federal. And if plaintiff had thereafter tried to sue on her state law claims in the New York State Supreme Court, arguing that the $1,000 Rule 68 offer applied only to her federal claim, I doubt very much whether defendant would have taken the position that she had any live claims left. Defendant's mootness argument is, in a word, idiotic.

Here, just as in *Shepherd*, Defendants attempt to cast an offer of judgment on only a single claim as complete relief of the entire lawsuit. Here, as in *Shepherd*, Defendants' incomplete Offer of Judgment fails to render the Complaint moot.

This alone is sufficient grounds to deny Defendants motion to dismiss for mootness.

### B.    In All Events, Even If the Offer of Judgment Was Complete, It Cannot Moot a Putative Class Action

The Second Circuit has never adopted a rule that a putative class action can be dismissed as moot because defendant made a Rule 68 offer of judgment to the named plaintiff. *Physicians Healthsource, Inc. v. Purdue Pharma L.P.*, 12-cv-1208, at \*3-5, 2013 U.S. Dist. LEXIS 127117 (D. Conn. Sept. 6, 2013). Further, the majority of Circuit Courts that have considered whether a Rule 68 offer of judgment to the named plaintiff can moot a putative class action have expressly

8

rejected such a rule.  *See*, *e.g.*, *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091- 92 (9th Cir.

2011) ("[W]e hold that an unaccepted Rule 68 offer of judgment—for the full amount of the

named plaintiff's individual claim and made before the named plaintiff files a motion for class

certification—does not moot a class action."); *Lucero v. Bureau of Collection Recovery, Inc.*,

639 F.3d 1239, 1249-50 (10th Cir. 2011) ("[A] named plaintiff in a proposed class action need

not accept an offer of judgment or risk having his or her case dismissed as moot before the court

has had a reasonable time to consider the class certification motion. Instead we conclude that a

nascent interest attaches to the proposed class upon the filing of a class complaint such that a

rejected offer of judgment for statutory damages and costs made to a named plaintiff does not

render the case moot under Article III."); *Weiss v. Regal Collections*, 385 F.3d 337, 348 (3d Cir.

2004) ("Absent undue delay in filing a motion for class certification, therefore, where a

defendant makes a Rule 68 offer to an individual claim that has the effect of mooting possible

class relief asserted in the complaint, the appropriate course is to relate the certification motion

back to the filing of the class complaint.")[4]

Here, there is no argument that Plaintiff has unreasonably delayed in filing a motion for

class certification. (See generally Defs. Memo; see also Procedural History, *supra*)  Defendants

have yet to answer the Complaint and no discovery, other than initial disclosures, has been

exchanged.  Thus, under the majority view the Offer of Judgment cannot moot this matter.

Plaintiff should be afforded an opportunity to make a timely motion for class certification.

Defendants' half-hearted attempt (Defs. Memo at p. 7 n.6) to claim that a class action can

---

[4] In *Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011) the 7th Circuit embraced the minority view that a Rule 68 offer of judgment can moot a putative class action. The 7th Circuit's decision in *Damasco* is an outlier among Circuit Courts.  In addition, even under *Damasco*, a defendant must offer complete relief to moot plaintiff's action, which as explained above, has not happened in this action.  Thus, even under *Damasco*, Defendants' motion fails.

be mooted by a Rule 68 offer of judgment fails.  First, *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (U.S. 2013) concerns an opt-in collective action under the Fair Labor Standards Act ("FLSA"), not a Rule 23 class action.  As the Court explained in *Genesis Healthcare* (at 1529 and 1532), "Rule 23 actions are fundamentally different from FLSA collective actions" and "[w]hatever significance 'conditional certification' may have in [an FLSA] proceedings, it is not tantamount to class certification under Rule 23."  Thus, *Genesis Healthcare*, which concerns a FLSA opt-in collective action and not a Rule 23 class action, is of little relevance here.

Second, *Lopez-Martinez*, 2013 U.S. Dist. LEXIS 165311 (Defs. Memo at p. 7 n.6), also concerns a FLSA opt-in collective action, and thus is not on point.  To contort this case to fit their argument, Defendants cite to a footnote in *Lopez-Martinez* (at *6 n.7) that labeled plaintiffs' argument that their claims are not moot because they did not have a reasonable opportunity to move for class certification of their state law claims as "without merit."  Defendants ignore that in *Lopez-Martinez* federal jurisdiction was based solely upon plaintiffs' FLSA claims.  Thus, if the FLSA opt-in collective action claims were mooted, the Court would lack an independent basis for subject matter jurisdiction over the state law claims.  Making Rule 23 unavailable in regard to the state law claims for which plaintiff argued they were entitled to be given a reasonable opportunity to move for class certification.  *Lopez-Martinez* only serves to highlight the very different considerations when a FLSA collective action is the basis for subject matter jurisdiction compared to when a court has an independent basis for jurisdiction over a putative Rule 23 class action (as is the case here).

Finally, the remainder of the cases Defendants' cite on this point (Defs. Memo at p. 7 n.6) were decided prior to Circuit Court guidance in *Pitts*, 653 F.3d at 1091- 92 (9th Cir. 2011),

*Lucero.*, 639 F.3d at1249-50 (10th Cir. 2011), and  *Weiss*, 385 F.3d at 348 (3d Cir. 2004) on this

issues, and therefore have little persuasive value.

For the foregoing reasons, Defendants' motion to dismiss for mootness should be denied.

## II.    DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM SHOULD BE DENIED

### A.    Standard of Review

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "must accept as true all

of the factual allegations contained in the complaint" and construe the complaint in the light

most favorable to plaintiff.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (internal

quotation marks omitted).  "The Court only 'assess[es] the legal feasibility of the complaint' it

does not 'assay the weight of the evidence which might be offered in support thereof.'" *Lee v.

Makhnevich*, No. 11-8665, 2013 U.S. Dist. LEXIS 43760, at *15 (S.D.N.Y. Mar. 27, 2013)

(internal citation omitted).  To state a facially plausible claim, a plaintiff must plead "factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.    The Complaint States a Claim Under GBL § 349

To state a claim under GBL § 349 a plaintiff must allege "that a defendant has engaged in

(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered

injury as a result of the allegedly deceptive act or practice."  *See Koch v. Acker, Merrall &

Condit Co.*, 18 N.Y.3d 940, 941 (2012).  Intent to defraud and justifiable reliance are not

elements of a claim under GBL § 349.  *Id.*; *see also Oswego Laborers' Local 214 Pension Fund

v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25-26 (1995).  A claim under GBL § 349 does not

trigger the particularity requirements of Fed. R. Civ. P. 9(b). *See Pelman v. McDonald's Corp.*,

396 F.3d 508, 512 (2d Cir. 2005).

The Complaint sets forth in great detail that Defendants deceptively represented to borrowers that their loans will be amortized in accordance with schedules established at the start of repayment as reflected on the Loan Consolidation Disclosure Statement and Repayment Schedules issued to borrowers when, in fact, the Loan Consolidation Disclosure are materially incorrect, and Defendants employ a system which disregards the proper amortization schedules in favor of crediting payments to student loans in a manner that appears to be intended to keep borrowers in debt to maximize the amount of interest paid to the lender over the life of the loans. (AC ¶¶3, 29, 46)  Specifically, the Complaint alleges that after misapplying Plaintiff's monthly payment for nearly 13 years, the Xerox system automatically increased Plaintiff's total repayment amount by over $6,300.00 to compensate for the systems failure to apply payments in accordance with the Disclosure Statement. (AC ¶¶15-17, Ex. B)  When Xerox customer service representatives tried to correct the changes made by the Xerox system, they could not.  (AC ¶¶16-27, Exs. C-F)

A review of the Repayment History illustrates the failures of the Xerox servicing systems.  Plaintiff began making regular payments beginning on November 28, 1999. (AC ¶14)  The Repayment History shows that not a single cent of his first 40 monthly payments was applied to principal.  Thus, Defendants were in effect charging Plaintiff interest at a rate of approximately 11%[5] during this period when Plaintiff's interest rate at all times was supposed to be 9% (AC ¶11).  After this period, the servicing of Plaintiff's loan became no less erratic with a seemingly arbitrary amount of Plaintiff's monthly payment split between principal and interest. (See Repayment History)   The Repayment History shows an obvious disconnect between the Loan Consolidation Disclosure Statement and Repayment Schedules sent to borrowers and how

---

[5] By applying all of Plaintiff's approximately $285.00 monthly payment to interest, Defendants were charging Plaintiff approximately $3,420.00 of interest annually on a loan with a principal balance of $30,441.43 (AC Ex. A). $3,420.00/$30,441.43 = 11.23% annual interest during the first 40 payments.

the Xerox system actually services borrowers' loans.  This is unquestionably deceptive, and Defendants' arguments do nothing more than raise factual disputes. *See Breitman v. Xerox Educ. Servs., LLC*, 12 civ 6583, 2013 U.S. Dist. LEXIS 139613, at *11 (S.D.N.Y. Sept. 27, 2013) (Denying Xerox's motion to dismiss a claim for violation of GBL § 349 for deceptive servicing of student loans because "[a] financial institution's failure to properly implement an agreement with a customer by improperly crediting a customer's account for their payments, as alleged herein, is objectively deceptive.")

The Complaint further alleges two recent government reports that corroborate Plaintiff's allegations that Xerox's servicing systems are materially flawed.  First, in the *Fiscal Year 2012 Annual Report for Federal Student Aid* ("2012 Annual Report"), FSA found that the Xerox student loan "servicing system" has "material weaknesses" that cause, among other things, "inflated loan balances." (AC ¶¶4, 28-29, 32)  Second, in the *U.S. Department of Education FY 2012 Agency Financial Report* ("2012 Financial Report"), the Department found the Xerox servicing system" has "internal control deficiencies" that "may adversely impact the accuracy of financial reporting, to include the reporting of loan of loan balances…" (AC ¶¶4, 28, 30-32)

To attempt to discredit the two reports cited in the Complaint, Defendants filed the Declaration of Jamie Broedel [Dkt. No. 59] ("Broedel Dec."), a Senior Research and Legal Support Specialist for the Financial Services Group of Xerox.  The self-serving Broedel Dec. does nothing more than raise factual issues concerning the systems used by Xerox to service student loans.  The reports do not, as Mr. Broedel asserts, implicate only Xerox Education Solution, LLC.[6]  For example, the 2012 Financial Report (at p. 33), refers to "Xerox, Inc."

---

[6] Mr. Broedel's statement disregards the web of entities that do business under the banner of "ACS."  A review of the attachments to the Broedel Dec. shows the that the "Authorized Person" on the filings made for Xerox Education Services, LLC and Xerox Education Solutions, LLC is the same person, J. Michael Peffer.  Moreover, neither the reports, Xerox's webpage (http://www.acs-inc.com/), nor Xerox's SEC filings makes clear that separate ACS

generically as the operator of the faulty systems servicing both Direct Loans (student loans issued by Federal Government) and Federal Family Education Loans ("FFEL") (student loans issued by a private lender and guaranteed by the Federal Government). Plaintiff has an FFEL loan (AC ¶7), thus determination of whether the faulty systems mentioned in the reports do or do not touch Plaintiff's loan plainly involves factual determinations that cannot be determined at this early state of the case without the benefit of discovery. Further, both reports separately define the flawed serving system as "ACS, Inc. Education Servicing (ACES)." The definition of the ACES system apart from any specific entity manifests an intent to show that the system may or may not be attributable to any one specific Xerox/ACS entity. It is premature on a motion to dismiss to discredit the reports cited in the Complaint simply because a "Legal Support Specialist" who is "proud" of his company has asked the Court to take his word for it that his employer has committed no wrongdoing.[7]

The Complaint plainly alleges consumer-oriented conduct. Defendants dealt with Plaintiff as they would any other student loan borrower. Plaintiff was given the standard form promissory note (Declaration of Robin L Muir, Esq. [Dkt. No. 57] Ex. A), and was given the standard form Loan Consolidation Disclosure Statement and Repayment Schedule explaining what was supposed to be his repayment terms (AC Ex. A). Defendants do not, and cannot argue, that Plaintiff's loan was serviced on a one-to-one basis or under some sort of special arrangement. Plaintiff's loan was serviced, as all loans serviced by Xerox, by Xerox's servicing systems. (AC ¶¶15-27) Thus, as the Complaint alleges, whatever systematic failure caused

---

entities exist let alone where one entity's responsibilities stop and another's starts. The Broedel Dec. does not reflect how Xerox under the ACS banner actually holds itself out to the public.

[7] If the various entities doing business under the Xerox/ACS banner are as compartmentalizes as Mr. Broedel represents, it defies logic that as a "Legal Support Specialist" from a single entity he would have actual knowledge of the technical operations of the servicing systems of both entities (one of which he claims to not even work for).

Plaintiff's loan to be improperly serviced existed for all loans serviced by the Xerox systems. (AC ¶¶26-27)  This is consumer-oriented conduct and not a dispute uniquely between Plaintiff and Xerox.  *See Oswego Laborers' Local 214 Pension Fund.*, 85 N.Y.2d at 26-27.[8]

    Defendants' arguments (Defs. Memo at pp. 13-14) that they did nothing deceptive and they engaged in no materially misleading conduct are merely requests by the Defendants that the Court at this stage of the case adopt their version of events, all of which are disputed.  But that is not a proper basis to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).  The materially misleading element of a claim under GBL § 349 is satisfied when the conduct alleged is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *See*, *e.g.*, *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007); *see also Breitman v. Xerox Educ. Servs., LLC*, 2013 U.S. Dist. LEXIS 139613, at *11 (S.D.N.Y. Sept. 27, 2013) (denying Xerox's motion to dismiss a claim under GBL § 349 for deceptive servicing of student loans); *Dolan v. Fairbanks Capital Corp.*, 03 CV 3285, 2013 U.S. Dist. LEXIS 34830, at *53-54 (E.D.N.Y. Mar. 13, 2013) (denying summary judgment on a GBL § 349 claim because improperly crediting loan payments was a "deceptive act or practice.")  As set forth above, the Complaint plainly alleges more than enough facts to plead that Defendants engaged in deceptive acts.

    Defendants' argument (Defs. Memo at pp. 10-11) that a GBL claim cannot be contained in a complaint alleged upon information and belief is also meritless.  The cases cited by Defendants on page 11 of their Memo of Law stand for the unremarkable proposition that conclusory allegation made upon information and belief are insufficient to state a claim under GBL § 349.  These cases do not provide, as Defendants claim, that a GBL § 349 claim contained

---

[8] Defendants' reliance on *Gorham-Dimaggio v. Countrywide Home Loans, Inc.*, 592 F. Supp. 2d 283 (N.D.N.Y 2008) (Defs. Memo at p. 12) is misguided.  In *Gorham-Dimaggio* plaintiff alleged discriminatory and retaliatory conduct specifically directed at her.  Here the Complaint does not allege the problems with Plaintiff's loan servicing where specifically directed at him, but rather alleges that the problems were caused systematically.

in a complaint alleged upon information and belief is *per se* dismissible.  As explained above, the Complaint alleges a claim under GBL § 349 with great detail, attaches specific documents that support Plaintiff's allegations, and references two government reports that corroborate the allegations.  In all events, even if Defendants are correct on this point, which they are not, Plaintiff should be granted leave to replead.  Further,  Defendants' point that a GBL claim is subject to the pleading standards explained in *Twombly* and *Iqbal* (Defs. Memo of law at p. 10 n.7) is similarly mundane.  *Twombly* and *Iqbal* have been law for several years and Defendants do not even argue that a GBL claim is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).

Finally, the Complaint alleges actual injury resulting from Defendants' deceptive conduct.  As explained above (see Point I.A., *supra*), Defendants' have not offered Plaintiff complete relief in this action.  Thus, their argument (Defs. Memo. at p. 15) that the Complaint does not allege injury because of mootness also fails.

The Complaint states a claim under GBL § 349.

### C.    Wells Fargo Is Responsible For the GBL § 349 Violations of Its Agent Xerox

The Second Circuit in *Cruz v. Fxdirectdealer, LLC*, 720 F.3d 115, 123-24 (2d Cir. 2013) held an out of state plaintiff has standing to assert a claim under the GBL when the allegedly deceptive transaction occurs in New York, regardless of the plaintiff's location.  It is well settled that a principal is responsible for the torts of its agent committed within the scope of the agent's duties. *See Douyon v. NY Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 270 (E.D.N.Y. 2012) ("A principal may held liable for its agent's violations of NY GBL § 349.")

Here, Xerox was Wells Fargo's agent, servicing student loans was plainly within the scope of Xerox's duties to Wells Fargo, and Xerox serviced Plaintiff's loan in New York State.

16

Thus, any deceptive acts in this matter by Xerox in the State of New York are attributable to

Wells Fargo. (AC ¶¶8-9)

The Complaint states a claim under GBL § 349 against Xerox and Wells Fargo.

## **CONCLUSION**

Defendants' motion should be denied in its entirety.

Dated: February 4, 2014

BRAGAR EAGEL & SQUIRE, P.C.

By: s/Justin A. Kuehn
    Lawrence P. Eagel (B.N.: 509836)
    Justin A. Kuehn (B.N.: 519105)
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
eagel@bespc.com
kuehn@bespc.com

*Attorneys for Plaintiff and the Class*

*Of Counsel:*

I. Stephen Rabin
RABIN & PECKEL LLP
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 880-3722
Fax: (212) 880-3716
srabin@rabinpeckel.com