UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JEFFREY D. REYNOLDS, on behalf of
himself and all others similarly situated,

                        Plaintiff,

     -against-                         6:13-CV-1223 (LEK/TWD)

XEROX EDUCATION SERVICES, INC.,
f/k/a ACS EDUCATION SERVICES, INC.;
and WELLS FARGO BANK, N.A.,

                        Defendants.

**MEMORANDUM-DECISION and ORDER**

**I.**     **INTRODUCTION**

        Plaintiff Jeffrey D. Reynolds ("Plaintiff") commenced this putative class action against Defendants Xerox Education Services, Inc., formerly known as ACS Education Services, Inc. ("XES" or "ACS"), and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, "Defendants"), alleging various causes of action relating to the servicing of his student loans. Dkt. Nos. 1 ("Original Complaint"); 50 ("Amended Complaint"). Now pending before the Court are Wells Fargo's Motion to dismiss Plaintiff's unjust enrichment claim and Defendants' Joint Motion to Dismiss the Amended Complaint. Dkt. Nos. 42 ("Wells Motion"); 55 ("Joint Motion"). For the following reasons, the Motions are denied.

## II. BACKGROUND[1]

### A. Plaintiff's Consolidated Student Loan

Plaintiff is a resident of Virginia. Am. Compl. ¶ 7. On or around October 1992, Plaintiff consolidated his federal student loans with Signet Bank (the "Loan"). Id. Through a series of mergers and acquisitions, Wells Fargo became the owner of Plaintiff's Loan. Id. ¶¶ 7, 9. XES is a limited liability company incorporated in Delaware and headquartered in California. Id. ¶ 8; see also id. at 1. XES is the servicer of Plaintiff's Loan. Id. ¶ 8. XES maintains an office in Utica, NY. Id. Computer systems involved in the servicing of Plaintiff's Loan, as well as employees who corresponded with Plaintiff regarding his Loan, were both based at the Utica facility.[2] Id.

Plaintiff's Loan is a fixed interest rate loan with "level" stated payments. Id. ¶ 10. The Level Repayment Plan "is designed to allow the borrower to make payments of equal amounts throughout the payment period" and "provides the least amount of interest accrual over the life of the loan." Id. The original balance of Plaintiff's Loan was $22,636.97, with an annual interest rate of 9.00%. Id. ¶ 11. From on or around 1992 to on or around 1999, the Loan was in deferment or forbearance ("Forbearance Period"). Id. The interest that accrued during the Forbearance Period was capitalized into the Loan before the Loan entered repayment. Id. At that time, a third party, as part of a college tuition reimbursement program, made a payment of $2,865.29, which reduced the

---

[1] Because this action is presently before the Court on a motion to dismiss, the allegations of the Amended Complaint are accepted as true and form the basis of this section. See Raila v. United States, 355 F.3d 118, 119 (2d Cir. 2004); Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000).

[2] Plaintiff alleges that a 2012 Department of Education ("DOE") report states that ACS's servicing system has "material weaknesses," resulting in, *inter alia*, inflated loan balances. Am. Compl. ¶¶ 28-29. Another 2012 DOE report, completed by independent auditors, states that ACS's servicing system needs improvement. Id. ¶ 31.

2

Loan principal to $30,441.43 at the time repayment began.  Id.

Plaintiff received a Loan Consolidation Disclosure Statement and Repayment Schedule from AFSA Data Corp.[3] dated September 28, 1999 ("September 1999 Disclosure Statement").  Id. ¶ 12.  The September 1999 Disclosure Statement provided that, in order to repay the Loan in full, Plaintiff needed to make 215 monthly payments of $285.07 beginning on November 28, 1999, and one monthly payment of $283.56 on October 28, 2017.  Id.  It further provided that the total interest to be paid over the course of repayment was $31,132.18, which, combined with the total principal of $30,441.43, equaled a total repayment cost of $61,573.61.  Id. ¶ 13.  Plaintiff began making monthly payments of $285.07 in November 1999.  Id.

**B. Misapplied Payments**

In February 2012, Plaintiff noticed that his payoff balance was higher than the total of his 69 remaining payments.  Id. ¶ 15.  On or around February 4, 2012, Plaintiff called XES to inquire, and spoke to an employee at XES's Utica facility.  Id. ¶ 15.  A customer services supervisor confirmed that XES's computer system showed Plaintiff's final payment date as October 28, 2017, but the system also showed that the Loan would not be repaid in full as of that date.  Id. ¶ 16.  While the XES employee was trying to resolve this discrepancy, the XES computer system increased Plaintiff's monthly payment from $285.07 to $377.54.  Id.  The XES employee tried to change Plaintiff's monthly payment back to $285.07, but the computer system would not allow her to do so.  Id.  She advised Plaintiff that she would review his account and try to change his payment back to $285.07.  Id.

---

[3] XES, then known as ACS, acquired AFSA Data Corp. in or around June 2002.  Am. Compl. ¶ 12.

On or around February 16, 2012, Plaintiff received another Disclosure Statement ("February 2012 Disclosure Statement"). Id. ¶ 17. It stated that Plaintiff's 69 remaining payments had been increased to approximately $377 each, resulting in an increased total repayment cost of $6,300. Id. Around this time, Plaintiff received a call from the XES supervisor with whom he had previously spoken, and was informed that his account was still under review. Id.

On March 9, 2012, Plaintiff made another call to XES customer service, during which a different supervisor told him that she was unable to identify what was causing problems with his account, and that she would have the account reviewed. Id. ¶ 18.

Plaintiff called again on March 19, 2012, and spoke to a manager, who, although unable to determine the problem with Plaintiff's account, advised Plaintiff that he needed to continue making monthly payments of $377.54 while the account was under review. Id. ¶ 19.

On April 2, 2012, Plaintiff received another Disclosure Statement ("March 2012 Disclosure Statement"), which increased Plaintiff's 67 remaining payments to over $382 each. Id. ¶ 19. Plaintiff then called XES and spoke with yet another manager. Id. ¶ 20. This manager claimed that although he had identified and corrected the error in Plaintiff's account, he was waiting for final approval by upper management to correct and update the account. Id. ¶ 20. This anticipated approval never came. Id.

Plaintiff filed a complaint with the New York Better Business Bureau ("BBB") in July 2012. Id. After Plaintiff filed the BBB complaint, the manager who had identified the error in Plaintiff's account offered to reduce Plaintiff's monthly payment from $384 to $292, while extending the repayment term by 24 months. Id. ¶ 21. This change would result in the same total repayment cost as paying $384 per month over the original repayment term, i.e., an increased repayment cost of

4

several thousand dollars compared to the repayment terms listed in the September 1999 Disclosure Statement. Id. ¶ 21. Plaintiff rejected this offer, and the manager then advised him that he was waiting to meet with someone at XES's legal department to see how Plaintiff's account could be corrected. Id. Months later, the manager called Plaintiff and told him that he was able to adjust Plaintiff's monthly payment to $291 while extending the repayment term with 18 additional payments. Id. ¶ 22. Plaintiff rejected this offer and informed the manager that he had submitted a complaint to the BBB. Id.

At the BBB's recommendation, Plaintiff requested and received an additional Disclosure Statement ("October 2012 Disclosure Statement"), which stated that Plaintiff now owed 84 monthly payments of approximately $300 each. Id. ¶ 23.

In early November 2012, Plaintiff received a letter ("October 2012 Letter") stating that XES had adjusted Plaintiff's account such that he would pay a maximum of $37,620.59 in total interest, and that his monthly payments would be $291.91. Id. ¶ 24. The Letter did not state the number of remaining payments, but did say that Plaintiff had already paid $34,189.41 in interest. Id.

In early December 2012, Plaintiff received another Disclosure Statement ("November 2012 Disclosure Statement"), which stated that Plaintiff had 82 remaining monthly payments of approximately $303 each. Id. ¶ 25. It further provided that Plaintiff still owed a projected $6,340.08 in interest, which was nearly $3,000 more than the amount listed in the October 2012 Letter, and approximately $9,000 more than the total listed in the September 1999 Disclosure Statement. Id.

**C. Procedural History**

Plaintiff commenced this action in the U.S. District Court for the Southern District of New

5

York on February 13, 2013, asserting claims for breach of contract and unjust enrichment on behalf of himself and all other similarly situated individuals. Original Compl. On September 19, 2013, the Honorable Harold Baer, U.S. District Judge, granted Defendants' request to transfer the case to the Northern District of New York. Dkt. No. 26. On September 15, 2013, Wells Fargo moved to dismiss Plaintiff's unjust enrichment claim. Wells Mot.; Dkt. No. 44. Plaintiff responded by filing the Amended Complaint, which omits the unjust enrichment claim and adds a deceptive-acts-or-practices claim under New York General Business Law ("GBL") § 349. Am. Compl. ¶¶ 43-49. Defendants then filed their Joint Motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), seeking to dismiss the breach of contract claim for lack of subject matter jurisdiction and the GBL § 349 claim for failure to state a claim. Joint Mot.; Dkt. No. 56 ("Memorandum"). In support of their Motion, Defendants submitted, among other things, an Offer of judgment made pursuant to Federal Rule of Civil Procedure 68 dated December 23, 2013. Dkt. No. 58-1 ("Offer"). Plaintiff responded and Defendants replied. Dkt. Nos. 62 ("Response"); 64 ("Reply").

### III. BREACH OF CONTRACT

#### A. Legal Standard

In reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). A court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." Id. "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the

pleadings inferences favorable to the party asserting it.'" Gunst v. Seaga, No. 05 Civ. 2626, 2007 WL 1032265, at *2 (S.D.N.Y. Mar. 30, 2007) (quoting Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998)).

**B. Discussion**

Defendants argue that Plaintiff's breach of contract claim is moot because they have offered him judgment for the relief he seeks. Mem. at 4-8. Plaintiff responds that Defendants' Offer of judgment does not provide for complete relief, and therefore does not moot the action. Resp. at 5-8.

Federal Rule of Civil Procedure 68 provides that "a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." FED. R. CIV. P. 68(a). If the opposing party accepts the offer, the clerk must enter the agreed-upon judgment. Id.

"Under Article III of the U.S. Constitution, when a case becomes moot, the federal courts lack subject matter jurisdiction over the action." Doyle v. Midland Credit Mgmt., Inc., 722 F.3d 78, 80 (2d Cir. 2013) (internal quotation marks and alteration omitted). For instance, "if a defendant consents to judgment in the maximum amount for which the defendant could be held liable, there is no justification for taking the time of the court and the defendant in the pursuit of claims which the defendant has more than satisfied." Id. (internal quotation marks and alterations omitted). Accordingly, a Rule 68 offer of judgment may moot an action. See id. However, if the offer does not represent the maximum recovery available to the plaintiff in the action, the offer does not moot the action. Fernandez v. Peter J. Craig & Assocs., P.C., 985 F. Supp. 2d 363, 369 (E.D.N.Y. 2013).

Here, Defendants made an Offer to allow judgment to be entered in favor of Plaintiff, "on an individual basis only," such that Plaintiff: (1) "need make payments of only $285.07 per month and

7

one final payment of $283.56 on October 28, 2017"; (2) will receive a refund for the alleged overpayments; and (3) will receive prejudgment interest and costs. Offer at 1. In exchange, the Offer provides that this relief "shall be in full and complete satisfaction, release and discharge of any claim of the [Amended Complaint] as to which the alleged acts and/or omissions set forth . . . actually state a claim upon which relief can granted [sic]." Id. Plaintiff has not accepted the Offer. See Docket.

The Offer represents the maximum recovery available to Plaintiff on his breach of contract claim only, and excludes the additional damages available on a GBL § 349 claim. Offer; N.Y. GEN. BUS. LAW § 349(h) (providing for treble damages for willful and knowing violations); Am. Compl. ¶ 49 (seeking treble damages); see also Resp. at 6-8. Indeed, Defendants state in their Reply that the Offer considers only Plaintiff's breach of contract claim because Defendants contend that the Amended Complaint fails to state a GBL § 349 claim. Reply at 3 n.2. Because, as discussed *infra*, Defendants' Rule 12(b)(6) Motion to dismiss the GBL § 349 claim is denied, the Offer does not represent the maximum recovery available to Plaintiff on his claims in this action. See Hrivnak v. NCO Portfolio Mgmt., Inc., 719 F.3d 564, 567 (6th Cir. 2013) ("An offer limited to the relief the *defendant* believes is appropriate does not suffice. The question is whether the defendant is willing to meet the plaintiff on his terms."). Defendants' Rule 12(b)(1) Motion to dismiss the action for mootness is therefore denied.[4]

---

[4] In their briefs, the parties extensively discuss whether a complete offer of judgment would moot not only Plaintiff's claims, but also those of the putative class members. Mem. at 7 n.6; Resp. at 8-11; Reply at 5-8. Because the Offer does not moot any of Plaintiff's claims, the Court need not decide this issue.

8

**IV.     GBL § 349**

**A. Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678-79.

**B. Discussion**

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. GEN. BUS. LAW § 349(a). To state a claim under § 349, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at

9

consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000). Defendants argue that the Amended Complaint is insufficient as to each element. Mem. at 10-15. Additionally, Defendants argue that Plaintiff's claim against Wells Fargo fails because Plaintiff has not alleged that Wells Fargo committed a deceptive act in New York. Id. at 15-17.

*1. Elements of Claim*

a. Consumer Oriented

To satisfy the first element of a GBL § 349 claim, a plaintiff must allege "that defendants engaged in a consumer-oriented act, a requirement that has been construed liberally." Kapsis v. Am. Home Mortg. Servicing Inc., 923 F. Supp. 2d 430, 449 (E.D.N.Y. 2013) (internal quotation marks omitted). Consumer-oriented conduct has been defined as "conduct that potentially affects similarly situated consumers." SQKFC, Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 636 (2d Cir. 1996) (citation and internal quotations omitted). A plaintiff "need not show that the defendant committed the complained-of acts repeatedly—either to the same plaintiff or to other consumers—but instead must demonstrate that the acts or practices have a broader impact on consumers at large." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 744 (N.Y. 1995). Accordingly, "single shot transactions" or "private contract disputes" that are "unique to the parties" are not covered by the statute. Id.; Genesco Entm't v. Koch, 593 F. Supp. 743, 752 (S.D.N.Y. 1984).

Plaintiff has sufficiently alleged that the acts giving rise to his claim were directed at consumers. XES is in the business of servicing student loans, and it dealt with Plaintiff as it would with any other student borrower, including issuing him form documents and directing his questions

10

and complaints through its customer service apparatus. See Cyphers v. Litton Loan Servicing, L.L.P., 503 F. Supp. 2d 547, 553 (N.D.N.Y. 2007) (finding consumer-oriented conduct where defendant was large operation in the business of servicing loans and had obtained the plaintiffs' loans, along with an unspecified number of other loans, as part of a pooling and servicing agreement with lenders); Oswego Laborers' Local 214, 647 N.E.2d at 745 (finding consumer-oriented conduct where bank treated plaintiffs opening an account like any other customers, furnished them with standard documents presented to all customers opening an account, and account opening was not unique transaction). The allegedly improper crediting of Plaintiff's payments, and XES's failure to remedy the improprieties, arose from XES's computer systems, which are allegedly used to maintain the accounts of a broad class of consumers.[5] Am. Compl. ¶¶ 8, 26-32; see also Kapsis, 923 F. Supp. 2d at 449 (finding general business practice aimed at the public where plaintiff alleged that loan servicer failed to properly credit payments on accounts, failed to timely respond to debtors' communications, and issued false or misleading monthly statements); Cyphers, 503 F. Supp. 2d at 553. Plaintiff has therefore alleged sufficient facts to support the first element of his GBL § 349 claim.

### b. Deceptive and Materially Misleading

To satisfy the second element of a GBL § 349 claim, a plaintiff must allege that the

---

[5] Defendants have submitted evidence that they contend proves Plaintiff's allegations regarding the DOE reports to be false. Mem. at 12-13; Dkt. Nos. 57-59. Based on this evidence, Defendants argue that Plaintiff has failed to show consumer-oriented conduct. Mem. at 13. However, disregarding Plaintiff's allegations of widespread servicing errors documented in DOE reports, the Amended Complaint nevertheless states sufficient facts to support the first element of a GBL § 349 claim. Furthermore, a plaintiff's factual allegations are assumed true in deciding a motion to dismiss, and so Defendants' opposing factual contentions are irrelevant at this time. See Allaire Corp., 433 F.3d at 249-50.

defendant engaged in an act or practice that was "deceptive or misleading in a material way." Oswego Laborers' Local 214, 647 N.E.2d at 744. The New York Court of Appeals has adopted "an objective definition of deceptive acts and practices" that is limited "to those likely to mislead a reasonable consumer acting reasonably under the circumstances." Id. at 745.

Here, Plaintiff alleges that XES issued him an amortization schedule but did not adhere to the schedule in crediting his payments, causing Plaintiff to incur thousands of dollars in additional interest charges. Am. Compl. ¶ 2. This conduct is objectively deceptive and materially misleading.[6] See, e.g., Breitman v. XES, No. 12 CIV. 6583, 2013 WL 5420532, at *3 (S.D.N.Y. Sept. 27, 2013); Dolan v. Fairbanks Capital Corp., 930 F. Supp. 2d 396, 419 (E.D.N.Y. 2013). Plaintiff has therefore alleged sufficient facts to support the second element of his GBL § 349 claim.

### c. Injury

Defendants argue that Plaintiff has not established any actual injury because the Offer of judgment moots his breach of contract claim. See Mem. at 15. For the reasons stated *supra*, this argument fails. See supra § III.B.

Accordingly, the Amended Complaint alleges sufficient facts to support each element of a GBL § 349 claim.

### 2. Defendant Wells Fargo

Defendants further argue that Plaintiff's GBL § 349 claim fails against Wells Fargo because: (1) GBL § 349 does not cover claims between out-of-state parties based on out-of-state acts; and (2)

---

[6] Defendants argue that XES's unilateral alteration of the amortization schedule cannot be considered "deceptive" because XES "disclosed" those changes after-the-fact by sending Plaintiff statements that reflected the changes. Mem. at 13-14; Reply at 10. Defendants cite no authority supporting this novel and dubious argument.

Wells Fargo cannot be held liable for acts committed by XES. Mem. at 15-17.

### a. Territorial Jurisdiction

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state*" and provides a cause of action to "*any person* who has been injured" by a violation of the section. N.Y. GEN. BUS. LAW § 349(a), (h) (emphasis added). Therefore, "a deceptive transaction in New York falls within the territorial reach of section 349 and suffices to give an out-of-state victim who engaged in the transaction statutory standing to sue under section 349." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 123 (2d Cir. 2013). Plaintiff alleges multiple transactions originating from XES's New York operations, thereby satisfying the territorial jurisdiction requirement of GBL § 349. See generally Am. Compl. Additionally, for the reasons stated *infra*, Wells Fargo may be liable for the allegedly deceptive transactions committed by XES.

### b. Vicarious Liability

Defendants argue that Wells Fargo—the owner of the Loan—cannot be held liable for allegedly deceptive acts committed by XES—the servicer of the Loan. Mem. at 16-17. Plaintiff responds that Wells Fargo can be held liable because XES was acting as Wells Fargo's agent. Resp. at 16-17.

Under New York law, a principal may be held liable for the torts of its agent committed within the scope of the agency. Bigio v. Coca-Cola Co., 675 F.3d 163, 175 (2d Cir. 2012); see also Douyon v. N.Y. Med. Health Care, P.C., 894 F. Supp. 2d 245, 270 (E.D.N.Y. 2012) ("A principal may held liable for its agent's violations of N.Y. GBL § 349."). "[A]n agency relationship results from a manifestation of consent by one person to another that the other shall act on his behalf and

13

subject to his control, and the consent by the other to act." Bigio, 675 F.3d at 175. "The key inquiry in determining the existence of an agency relationship is whether the principal exercised control over the agent with respect to the matters entrusted to the agent." Douyon, 894 F. Supp. 2d at 270. "[T]he question of whether or not an agency relationship exists that is sufficient to bind the principal for the acts of the agent is 'very fact-specific, and no bright-line rules control.'" Wood v. Mustang Exp. Trucking, Inc., No. 00-CV-6433T, 2007 WL 655624, at *2 (W.D.N.Y. Feb. 26, 2007) (quoting Murray Hill Films, Inc. v. Martinair Holland, N.V., No. 86 Civ. 7477, 1987 WL 14918, at *3 (S.D.N.Y., July 17, 1987)).

Here, Defendants argue that "the Amended Complaint is devoid of any factual allegations that suggest that Wells Fargo exercised control over" XES's allegedly flawed servicing system. Reply at 12. However, the Amended Complaint alleges that ACS/XES was and is "the servicer of the Consolidated Student Loan acting as an agent of the Consolidated Student Loan's prior owners Signet Bank, First Union, and Wachovia, and now Wells Fargo." Am. Compl. ¶ 8. Contrary to Defendants' assertions, an allegation that a party acted as a loan servicer may support an inference that the creditor exercised control over the servicer and is therefore liable as a principal for the servicer's torts. Warden v. PHH Mortg. Corp., No. 10-CV-75, 2010 WL 3720128, at *4-5 (N.D. W. Va. Sept. 16, 2010) (finding that plaintiffs sufficiently pleaded principal/agent relationship between co-defendants based on allegation that co-defendants were servicer and owner of loan, respectively); see also In re Residential Capital, LLC, No. 12-12020, 2014 WL 1410310, at *3 (Bankr. S.D.N.Y. Apr. 14, 2014) (stating that "loan servicers typically are authorized to act as the agent for the owner of the note"); LFJ Realty Co. v. Bank of N.Y., 929 N.Y.S.2d 200, slip op. at 12 (Sup. Ct. Apr. 7, 2011) ("[C]ourts have either found [mortgage loan servicers] to be agents of the banks as a matter of

14

law or held that factual issues were raised regarding the existence of an agency relationship."); cf. In re Kline, 420 B.R. 541, 548 (Bankr. D.N.M. 2009) (finding that knowledge of loan servicer can be imputed to lender based on agency theory). Accordingly, accepting the allegations in the Amended Complaint as true and drawing all reasonable factual inferences in Plaintiff's favor, see Allaire Corp., 433 F.3d at 249-50, the Court finds that Plaintiff has sufficiently pleaded a principal/agency relationship between Defendants. Whether Wells Fargo actually exercised the requisite level of control over XES to establish its liability as a principal is a question of fact not resolvable on a motion to dismiss. See Wood, 2007 WL 655624, at *2.

## V. UNJUST ENRICHMENT

Finally, the Court notes that Wells Fargo previously moved to dismiss Plaintiff's claim for unjust enrichment, Wells Mot., but that claim was subsequently withdrawn when Plaintiff filed the Amended Complaint, Am. Compl. Wells Fargo's Motion to dismiss the unjust enrichment claim is therefore denied as moot.

## VI. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant Well Fargo's Motion (Dkt. No. 42) to dismiss is **DENIED as moot**; and it is further

**ORDERED**, that Defendants' Joint Motion (Dkt. No. 55) to dismiss is **DENIED in its entirety**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

DATED: September 09, 2014
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge